# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ANGELA DARLENE ROWELL,      )
                            )
        Plaintiff,      )
                            )
v.                          )   Case No. CIV-18-74-SPS
                            )
ANDREW M. SAUL,             )
**Commissioner of the Social**  )
**Security Administration,**[1]  )
                            )
        Defendant.     )

## OPINION AND ORDER

The claimant Angela Darlene Rowell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-seven years old at the time of the most recent administrative hearing (Tr. 46). She has a high school education and has worked as a resident supervisor, resident care aide, day care worker, waitress, and kitchen helper (Tr. 51, 66). The claimant alleges that she has been unable to work since an amended onset date of September 7, 2012, due to anxiety, depression, tethered and split cord, tissue disorder, muscle pain, and back pain (Tr. 326, 331).

**Procedural History**

In September 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 291-92). Her application was denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled through her date last insured of December 31, 2012, in a written opinion dated November 19, 2014 (Tr. 131-40). The Appeals Council remanded the case on June 2, 2016 (Tr. 147-49). On remand, ALJ B.D. Crutchfield conducted another administrative hearing and again found the claimant was not disabled through her date last insured in a written decision dated November 29, 2016 (Tr. 16-27). The Appeals Council denied review, so the ALJ's November 2016 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found the claimant retained the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.,* she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; stand and/or walk two hours in an eight-hour workday; and sit six hours in an eight-hour workday (Tr. 22). Due to psychologically-based limitations, the ALJ found the claimant could perform simple and some complex tasks (defined during the hearing as semi-skilled) with routine supervision, adapt to change, and avoid hazards in a workplace setting (Tr. 22). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, telephone solicitor, credit card clerk, and data examination clerk (Tr. 26-27).

**Review**

The claimant contends that the ALJ erred by failing to: (i) account for her headaches and nonsevere carpal tunnel syndrome and incontinence in formulating her RFC, and (ii) pose a hypothetical to the vocational expert ("VE") that included all of her limitations. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of undifferentiated and mixed connective tissue disease, minimal spondylosis of the lumbar spine, and affective disorder, but that her intermittent bladder incontinence, history of tethered cord syndrome, status post left carpal tunnel release, and fibromyalgia were nonsevere (Tr. 19). The medical records prior to the claimant's alleged onset date reveal that providers at Creek

Nation Indian Clinic managed her medications for various complaints of pain, including headaches, back pain, and leg pain, between June 2008 and March 2012 (Tr. 515-748). These treatment notes do not contain any physical examination findings, but do reflect numerous diagnoses including, *inter alia*, cephalgia, chronic headaches, neuralgia, peripheral neuropathy, mixed connective tissue disease, tethered cord syndrome, chronic pain, and congenital spinal disorder (Tr. 515-748).

The claimant established care at Cherokee Nation Health Clinic on June 20, 2012 and reported a "lot of joint pain" and that she had been out of her medications "for a while." (Tr. 1161-67). Dr. Zackery's physical examination was normal and she diagnosed the claimant with, *inter alia,* chronic headaches, congenital spinal cord anomaly, and mixed connective tissue disorder (Tr. 1164-66). At a follow-up appointment in September 2012, the claimant indicated that one of her medications was helpful for her back pain and headaches (Tr. 1155). At a follow-up appointment on December 5, 2012, the claimant reported a tingling sensation in her left arm when flexing her elbow (Tr. 1261). Dr. Zackery diagnosed the claimant with left upper extremity parethesias, prescribed a left wrist brace, and scheduled an electromyography study, although the record does not reflect that such study was performed (Tr. 1265).

The medical evidence after the claimant's date last insured indicates that providers at Cherokee Nation Health Services continued managing the claimant's chronic impairments well beyond her date last insured (Tr. 1231-60, 1284-90, 1501-06). At a follow-up appointment in July 2013, the claimant reported that her medications were no longer working and she was referred to a neurosurgeon and rheumatologist (Tr. 1243-46).

The claimant presented for a neurology consult with Dr. Charles Fullenwider on August 16, 2013, who found increased tone in both lower extremities with hyperreflexia, clonus, and early gait changes, all of which he stated were consistent with the claimant's tethered cord (Tr. 1193-98). He indicated that surgery to release the tethered spinal cord would be necessary and he referred the claimant for a lumbar spine MRI, the results of which were consistent with a tethered cord and mild degenerative disc and facet disease (Tr. 1197-1200). Dr. Fullenwider recommended the use of a walker in September 2013 (Tr. 1191).

The claimant presented for a rheumatology consult with Dr. Judith James on April 17, 2014 (Tr. 1498-99). Dr. James found the claimant had good range of motion in her extremities except for a decrease in her shoulders and hips, diffuse muscle pain, and tenderness scattered in her proximal and distal interphalangeal joints (Tr. 1498). Dr. James indicated the claimant's connective tissue disease had not transitioned since she was first diagnosed eight years earlier and was unlikely to do so (Tr. 1498). She recommended evaluation for a muscle disease, hand x-rays, and follow-up care with a primary care physician and pain management (Tr. 1499). April 2014 hand x-rays were normal (Tr. 1507-10).

State agency physician Dr. Kenneth Wainner completed a physical RFC assessment on January 24, 2013 and found the claimant could perform the full range of light work through her date last insured (Tr. 109-10). State agency physician Dr. Maria Pons completed a physical RFC assessment on July 25, 2013 and found, through her date last insured, the claimant could perform light work but was limited to two hours of standing

and/or walking in an eight-hour workday due to her history of tethered cord and mild degenerative changes (Tr. 121-23).

At the administrative hearing, the claimant testified that she injured her back at work in October 2007 (Tr. 46-47). She further testified that between 2010 and 2012, the tethered cord in her back prevented her from working because it caused headaches if she stood or sat very long (Tr. 52). The claimant also stated that she was using a walker on and off in September 2012 (Tr. 56). She testified that in September 2012, she could sweep a floor without having increased headaches, had no difficulty driving three or four times per week, but could not put laundry in the washing machine and could not vacuum more than one room (Tr. 56-58). The claimant indicated that her symptoms would come and go based on what she was doing, and the more she did the worse she hurt (Tr. 57-58). As to specific limitations, the claimant stated she could lift twenty pounds but could not do so four or five times in a row, could stand for ten or fifteen minutes, and could walk for ten minutes (Tr. 58-60).

In her written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing the evidence related to the claimant's tethered and split cord, the ALJ found improvement in the claimant's lumbar range of motion after her initial injury in 2007, good range of motion in her extremities, and that medications reduced her pain (Tr. 23). The ALJ further noted the claimant's reported arm pain and carpal tunnel syndrome but that hand x-rays were normal (Tr. 23). As to her alleged bowel and bladder control problems, the ALJ found these problems were "rather controlled," and that the record did not indicate this was a severe impairment, let alone one so invasive as to prevent

work (Tr. 24). The ALJ gave great weight to the state agency physicians' opinions, finding they were consistent with evidence of improved pain and the claimant's activities when her back pain was stable, and reflected a complete review of the record through the claimant's date last insured (Tr. 24).

The claimant contends that the ALJ erred at step two by failing to find her carpal tunnel syndrome and incontinence were severe impairments and by failing to consider her headaches at all. This Court and the Tenth Circuit have repeatedly held, "[o]nce the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008). Thus, even assuming *arguendo* that the ALJ erred by not finding the claimant's carpal tunnel syndrome, incontinence, and headaches were severe impairments, such error was harmless because he found she had other severe impairments at step two. The ALJ is, however, required to consider all of a claimant's impairments—both severe and nonsevere—singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'"), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill*, 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'")

[emphasis in original] [citations omitted]. However, the ALJ *did* address the claimant's nonsevere carpal tunnel syndrome when he noted hand x-rays well beyond her date last insured were normal and that she had good range of motion in her extremities upon examination in 2014 (Tr. 24). The ALJ also addressed the claimant's headaches, finding her tethered and split cord clearly caused her headaches, but that the use of pain medication significantly improved her symptoms (Tr. 23). As to her incontinence, the ALJ acknowledged the claimant's testimony about her need to be near a bathroom as well as her reports of incontinence to her doctors but concluded that the record did not indicate her incontinence was severe (Tr. 24). Furthermore, the claimant does not point to any evidence in the record showing that, prior to her date last insured, her carpal tunnel syndrome, incontinence, or headaches, either individually or in combination with her other impairments, resulted in any functional limitations. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all of the claimant's impairments since there was no evidence that such impairments restricted the claimant's ability to work).

The claimant also contends that the ALJ failed to include all her limitations in the hypothetical question he posed to the VE, and thus his step five findings are erroneous as well. Specifically, she asserts that the hypothetical question should have included limitations for her left upper extremity and for her ability to handle, finger, or feel because she reported symptoms consistent with carpal tunnel syndrome and was prescribed a left wrist brace in December 2012, and was eventually diagnosed with carpal tunnel syndrome after her date last insured. However, as set forth above, the ALJ clearly considered the

December 2012 treatment note and the claimant does not point to any other evidence prior to her date last insured to support the limitations she claims. Accordingly, the ALJ was not required to include additional limitations in his RFC assessment, or in his hypothetical question posed to the VE. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."); *See also Adams v. Colvin,* 553 Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC."), *citing Qualls,* 206 F.3d at 1372.

Despite the claimant's statements to the contrary, the essence of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 18th day of September, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**